IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GERALD W. MATTINGLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-3421 |
| ) | |
| ST. JOHN'S HOSPITAL OF THE ) | |
| HOSPITAL SISTERS OF THE ) | |
| THIRD ORDER OF ST. FRANCIS, ) | |
| an Illinois not-for-profit corporation, ) | |
| ) | |
| Defendant. ) | |

OPINION

SUE E. MYERSCOUGH, United States District Judge.

This cause is before the Court on Defendant St. John Hospital of the Hospital Sisters of the Third Order of St. Francis' Motion to Dismiss Count II of Plaintiff's Complaint (d/e 6). For the reasons that follow, the Motion is GRANTED.

I.  FACTS

In November 2011, Plaintiff Gerald W. Mattingly filed a two-count Complaint against Defendant alleging (1) a claim for discriminatory discharge based upon his sex in violation of 42 U.S.C. § 2000e-2(a)

(Count I); and (2) a request that the Court confirm, pursuant to § 11 of the Uniform Arbitration Act (710 ILCS 5/11), the backpay award made in Plaintiff's favor as a result of the grievance Plaintiff submitted following the termination of his employment (Count II). Plaintiff alleges the following facts in support thereof.

Plaintiff, a male registered nurse, was employed by Defendant for approximately 17 years. For approximately 13 years, Plaintiff worked as an interventional radiology nurse for Defendant.

In June 2009, an incident occurred in the radiology department wherein an elderly patient fell off the x-ray table and died. Plaintiff did not perform or supervise the procedure and was not in the room during the procedure. Nonetheless, Defendant discharged Plaintiff because of the incident.

Plaintiff alleges that Defendant had a written dispute resolution policy that was provided to its employees, a copy of which Plaintiff attached to the Complaint. The "General Policy" section of the Grievance Procedure provided as follows:

> [Defendant] makes every effort to prevent conditions which may result in an grievance, and to deal promptly, properly, fairly, objectively and in good faith with the grievances which occur. Eligible employees may utilize the grievance procedure without being subjected to restraint, interference, discrimination, retaliation or harassment of any form provided the procedure is followed in good faith by the employee.

Complaint, Plaintiff's Exhibit A, p. 97. The Procedure defines a grievance as "a complaint or dissatisfaction arising from an application or claimed violation of [Defendant's] policies, rules, or regulations, which may or will result in disciplinary action being taken by [Defendant] which the employee feels is unjust." Complaint, Plaintiff's Exhibit A, p. 97. "Any regular employee may appeal an action which he/she feels is unjust[.]" Complaint, Plaintiff's Exhibit A, p. 98.

According to the Grievance Procedure, an employee must first attempt to resolve the dispute informally. If the employee cannot resolve the issue informally, the employee must then confer with the Human Resources Department representative to "formally define the grievable issue(s), to determine if a grievable situation exists, and to possibly

resolve the matter through mediated discussions." Complaint, Plaintiff's Exhibit A, p. 98.

Once an employee files a formal grievance, the matter proceeds in four steps. In Step One, the grievance is presented to the grievant's Department Director, who reviews and investigates the problem. The employee has five work days to accept the Department Director's determination or appeal the decision to the Division Assistant Administrator.

In Step Two, the Division Assistant Administrator or Division Director reviews the matter and provides a written determination. The grievant may accept the decision or formally appeal the matter to the Fact-Finding Panel (Step Three).

The Fact-Finding Panel consists of (1) "an Administrative Council member from a division other than the grievant's"; (2) "a qualified designee of the manager"; and (3) a qualified designee of the grievant." Complaint, Plaintiff's Exhibit A, p. 100. All panel members must be employees of Defendant and must not have any previous knowledge of or

involvement in the matter.  After the panel makes a recommendation, either party to the dispute may appeal the matter to the Chief Executive Officer (Step Four).

Upon an appeal, the Chief Executive Officer issues a determination. The Grievance Procedure provides that "The decision of the Chief Executive Officer shall be final."  Complaint, Plaintiff's Exhibit A, p. 101.

The Grievance Procedure does not allow the employee to be represented by outside sources, stating:

> Since the grievance procedure is a process for the internal resolution of employee problems, representation of the employee by outside sources is not permitted.  However, the employee may request a fellow employee to assist n the presentation of the grievance.

Plaintiff alleges he followed the Grievance Procedure.  At Step Three, the Fact-Finding Panel recommended that Plaintiff's termination from employment be set aside and that he receive a 14-day suspension from employment.  Complaint, Plaintiff's Exhibit D (recommendation by the Fact-Finding Panel).  The Panel further recommended that Plaintiff be reinstated to his former position and be granted an award of backpay.

The Director of the Department of Radiology appealed the Fact-Finding Panel's recommendation.  In October 2009, Defendant's Chief Executive Officer agreed to set aside Plaintiff's termination, reinstate him to employment with Defendant as a critical care nurse in an area other than the Department of Radiology, and granted Plaintiff an award of backpay following a 14-day suspension.

Plaintiff attached to his Complaint the Chief Executive Officer's October 29, 2009 letter to the Director of Radiology.  See Complaint, Plaintiff's Exhibit E.  Following a listing of the Chief Executive Officer's "final recommendations," the letter provides as follows:

> Please consider these recommendations as final and the process for review of [Plaintiff's] grievance complete.  Based on a review of the Hospital's Grievance Policy, [Plaintiff] has been granted due process and therefore this matter should be considered closed.
>
> If you have any questions regarding these findings, please let me know.  However, these findings are considered final for purposes of the grievance procedure.

Complaint, Plaintiff's Exhibit E.

Plaintiff further alleges that despite the Chief Executive Officer's decision, Defendant refused to pay Plaintiff the award of backpay unless Plaintiff signed an agreement containing a general release of all claims held by him against Defendant "arising from any fact, circumstance[,] or event occurring or existing prior to the date of the release."  Complaint, ¶ 23.

Plaintiff alleges that as a result of Defendant's refusal to comply with the grievance award in the dispute resolution proceeding described, he has suffered monetary and economic damages.  In Count II, Plaintiff seeks, pursuant to § 11 of the Uniform Arbitration Act, that the Court confirm the backpay award made in his favor.

Defendant has filed a Motion to Dismiss Count II pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  For purposes of the

motion, a court must accept as true all well-pleaded allegations contained in the complaint and draw all inferences in the light most favorable to the non-moving party.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests'" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level."  EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).  Conclusory allegations are "not entitled to be assumed true."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009) (citing Twombly, 550 U.S. at 544-55).

In addition, "[a]ny written instrument attached to the complaint is considered part of the complaint." Moranski v. General Motors Corp., 433 F.3d 537, 539 (7th Cir. 2005) (citing Fed. R. Civ. P. 10(c)). If the exhibits conflict with the allegations of the complaint, the exhibits generally control. Massey v. Merrill Lynch & Co., Inc., 464 F.3d 642, 645 (7th Cir. 2006).

### III.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's claim in Count I is based on a federal statute. See 28 U.S.C. § 1331. The Court has jurisdiction over Count II, the state law claim, pursuant to its supplemental jurisdiction. See 28 U.S.C. § 1367(a). Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within the judicial district of this Court. See 28 U.S.C. § 1391(b)(2) (a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

### IV.  ANALYSIS

In its Motion to Dismiss, Defendant asserts that, while the nature of the claim in Count II is not identified, Plaintiff has (1) failed to state a claim for breach of contract; and (2) failed to allege an enforceable arbitration agreement necessary to establish a claim under § 11 of the Uniform Arbitration Act.

With regard to a potential breach of contract claim, Defendant argues the Employee Handbook, which contained the Grievance Procedure, did not create any contractual rights on behalf of Plaintiff because (1) the policy does not contain a clear statement that employees were entitled to the Grievance Procedure or that the procedure was binding on Defendant; and (2) the Employee Handbook did not create enforceable rights because it disclaimed the existence and creation of any contract.[1]

In his response to the motion, Plaintiff states that he does not address the breach of contract argument made by Defendant because

---

[1] Defendant attached to its Motion to Dismiss the "Applicability of Handbook" section (page 5) of the Employee Handbook. This Court can consider a document attached to a motion to dismiss if the document is referenced in the complaint and central to the plaintiff's claim. See 188 LLC v. Trinity Industries, Inc., 200 F.3d 730, 735 (7th Cir, 2002).

Count II is not a breach of contract claim. See Response, p. 2 n. 1 (d/e 11). Plaintiff identifies his claim as an action, pursuant to § 11 of the Uniform Arbitration Act, to confirm a backpay award made in his favor as a result of a grievance proceeding conducted pursuant to the terms of the Employee Handbook. Motion, p. 1 (d/e 11). Plaintiff asserts that (1) the proceeding held pursuant to Defendant's dispute resolution procedure may, under the Uniform Arbitration Act, be confirmed by the Court; (2) Defendant failed to challenge the award within the time prescribed by the Uniform Arbitration Act and is now barred from raising any defense based upon the nonexistence of an agreement to arbitrate; (3) by participating in the grievance dispute proceeding, Defendant waived any "entitlement it might have had for challenging the lack of an agreement to arbitrate"; and (4) the Employee Handbook constitutes an agreement to arbitrate within the meaning of the Uniform Arbitration Act. See Response, p. 2 (d/e 11).

With certain exceptions not applicable here, the Illinois Uniform Arbitration Act provides that a written agreement to arbitrate is valid,

enforceable, and irrevocable:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract[.]

710 ILCS 5/1.  Section 11 of the Uniform Arbitration Act, pertaining to confirmation of an award, provides that "[u]pon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in Sections 12 and 13."   710 ILCS 5/11.

Plaintiff asserts that the Grievance Procedure in the Employee Handbook constituted an agreement to arbitrate.  "An agreement to arbitrate is a matter of contract."  Peterson v. Residential Alternatives of Ill., Inc., 402 Ill. App. 3d 240, 245 (2010).  Therefore, when determining whether the Grievance Procedure constituted an agreement to arbitrate, the Court applies ordinary state law principles governing contract interpretation.   See Melena v. Anheuser-Busch, Inc., 219 Ill. 2d 135,

149 (2006).

In Illinois, when construing a contract, "the primary objective is to give effect to the intention of the parties." Thompson v. Gordon, 241 Ill. 2d 428, 441 (2011). To determine the parties' intent, this court looks to the language of the contract, construing it as a whole. Id.

Black's Law Dictionary defines "arbitration" as "[a] method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties and whose decision is binding." BLACK'S LAW DICTIONARY 119 (9th ed. 2009). "The purpose of arbitration is to avoid the formalities, delay, and expenses of litigation." Advance Iron Works, Inc. v. ECD Lincolnshire Theater, L.L.C., 339 Ill. App. 3d 882, 886 (2003); see also, e.g., Salt Lake Tribune Publishing Co., LLC v. Management Planning, Inc., 390 F.3d 684, 689 (10th Cir. 2004) ("Central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute."). Moreover, an arbitration provision "must be clearly set forth in the contract between the parties." Beider v. Eugene Matanky &

Associates, Inc., 55 Ill. App. 3d 354, 357 (1977).

In this case, the Grievance Procedure never uses the term "arbitration."  See Kennedy v. Commercial Carriers, Inc., 258 Ill. App. 3d 939, 945 (1994) (noting that none of the lease agreements "even mention the word arbitration" and finding that the grievance clause in the collective bargaining agreement had no application to the lease agreements).  Although this Court notes that the Grievance Procedure bears some similarity to arbitration–such as providing for a Fact-Finding Panel that includes one designee of the grievant and one designee of the manager– the plain language of the Grievance Procedure indicates the procedure is neither mandatory nor binding.  An employee is not required to use the Grievance Procedure.  See Grievance Procedure, p. 97-98 ("Eligible employees may utilize the grievance procedure . . ." and "[a]ny regular employee may appeal an action").  Moreover, the Grievance Procedure is not the exclusive remedy.  Nothing in the language of the Grievance Procedure bars an employee from seeking a judicial remedy either instead of or in addition to the Grievance

Procedure.

This Court has located only one Illinois case with even remotely similar facts.  In <u>Ford v. University of Illinois Board of Trustees</u>, 55 Ill. App. 3d 744, 746 (1977), the plaintiff alleged that the defendants' grievance procedure was an arbitration process and requested the trial court order the defendants to carry out the mandate of the arbitration.  Specifically, the plaintiff alleged that he presented a grievance to the professional advisory committee(P AC), that the PAC had established an arbitration process for grievances, and that the process was refined by the Chancellor of the University.  <u>Id.</u>  The plaintiff also attached to his complaint (1) a letter outlining the purpose and scope of the PAC and (2) a letter from the Chancellor that "outlined and put into effect an interim grievance policy involving the PAC."  <u>Id.</u> at 746-47.  The court indicated that, in the letters, the Chancellor "indicated that the grievance policy and procedure did not entail arbitration and that the University did not have to follow the recommendations of the PAC."  <u>Id.</u> at 747.  The appellate court concluded that the plaintiff had failed to state a

claim for the defendants' failure to follow the recommendations of the PAC because the documents attached to the complaint demonstrated that the PAC had not conducted an arbitration hearing and the defendants were not required to follow the recommendations of the PAC. Id.

Similarly, here, the attachments to Plaintiff's Complaint demonstrate that the Fact-Finding Panel did not conduct an arbitration hearing and merely made a recommendation, which was then "appealed" to the Chief Executive Officer. The Chief Executive Officer's recommendation was not binding and was final only with regard to the grievance procedure. See Plaintiff's Exhibit E, Letter of Chief Executive Officer (stating that "these findings are considered final for purposes of the grievance procedure").

This Court finds it unfortunate that Defendant created a Grievance Procedure and refused to adopt the ultimate recommendation made by the Chief Executive Officer. However, Plaintiff's remedy does not lie with the Unified Arbitration Act because, as a matter of law, the

Grievance Procedure did not constitute a contract to arbitrate.

Because the Grievance Procedure was not a contract to arbitrate, this Court disagrees with Plaintiff's argument that Defendant has waived its right to claim that no contract to arbitrate exists.  See 710 ILCS 5/12 (providing that within 90 days of the delivery of a copy of the award, a court may vacate the award on the ground that there was no arbitration agreement).  The Chief Executive Officer's "final recommendation" was not an arbitration award, and, therefore, § 12 of the Uniform Arbitration Act does not apply.

## V.  CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss Count II of Plaintiff's Complaint (d/e 6) is GRANTED and Count II is dismissed.

ENTER: April 17, 2012

FOR THE COURT:

                                       s/Sue E. Myerscough
                                     SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE